# Richmond.

WASHINGTON v. COMMONWEALTH.

DECEMBER 5th, 1889.

CRIMINAL PROCEEDINGS—*Jurors—Competency.*—Where juror being examined says he has formed and expressed an opinion as to defendant's guilt, based on rumor and newspaper accounts, which was "right positive" and evidence would be required to remove it, but that he could give defendant a fair trial. HELD: He is incompetent.

Error to judgment of corporation court of Fredericksburg rendered July 25, 1889, on trial of an indictment against Jordan Washington for murder. The jury found him guilty of murder in the second degree, and fixed the term of his confinement in the penitentiary at eighteen years, and the court sentenced him accordingly. Prisoner brought the case here on writ of error. Opinion states the case.

*Little & Little*, for the plaintiff in error.

*Attorney-General R. A. Ayers*, for the commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The facts are not certified, and the case comes up on bills of exception taken by the prisoner to the rulings of the court as to the competency of certain jurors who rendered the verdict, and as to the summoning of some of the jurors and the forming of the jury.

It appears from the first bill of exceptions that when the jurors were sworn to answer questions propounded by the court, one of the jurors, John F. Scott, being asked by the court whether he had formed or expressed an opinion of the guilt or innocence of the prisoner at the bar, said he had (both) formed and expressed an opinion, and that said opinion was based on what he had read in the newspapers and had heard outside as rumor; and the court asked him if he had formed a *decided* opinion, and he answered: "My opinion is right positive." The prisoner then propounded to him the question, "Is your opinion such that it would take evidence to remove it?" and the juror answered "that it would take evidence to remove it"; but juror said that he could give the prisoner a fair and impartial trial, and if the evidence turned out to be different from what he had heard and read, he would change his mind. Whereupon the prisoner objected to the said juror, but the court decided he was a competent juror.

The case of this juror (Scott), in his answers and the questions put to him, is almost exactly and identically similar to that of the juror (Hawkins) in the case of *Dejarnette*, 75 Va., 872. In that case James P. Hawkins, a venireman, being asked by the court whether he had formed and expressed any opinion as to the guilt or innocence of the prisoner, answered "that he had formed and expressed a hypothetical opinion, but that said opinion could be changed by evidence; that he had formed it from reading newspapers and from what he had heard, but could give the prisoner a fair and impartial trial." And thereupon the prisoner propounded to him the following questions: "Have you now a decided opinion in your mind as to the guilt or innocence of the prisoner without evidence?" To which the juror answered: "I haven't a decided opinion, but rather a positive one." "Would it require evidence to remove the opinion you now have?" To which the juror answered: "It would."

Judge Staples, in the opinion in this case, said: "And with

respect to the venireman here, whatever confidence he may have in his ability to give the accused a fair trial, however willing he may be to trust himself, it is plain, from his own showing, he had prejudged the case, and was therefore unfit to be trusted with the important duty of passing upon the question of the prisoner's guilt or innocence. A majority of the court are therefore of opinion that the corporation court erred in overruling the objection to the venireman."

And in this same case, in passing upon the competency of the juror (Barksdale) who responded to the inquiry of the court, that he could "not now say that he had such opinion that evidence would not remove it," Judge Staples said : "As was said by this court in *Wright's case*, 32 Gratt., 941, the juror must be able to give the accused a fair and impartial trial. Upon this point nothing should be left to influence or doubt. All the tests applied by the courts—all the inquiries made into the state of the juror's feelings—are simply with a view of securing a tribunal competent to receive and weigh the evidence and render a verdict accordingly, unimpaired by prejudice or preconceived opinions. If there is a reasonable doubt of whether the juror comes up to this standard, that doubt should be resolved in favor of the accused. It is very true that in the present case the juror stated that he could give the prisoner a fair trial. Few men would be willing to acknowledge they could not do the same thing."

As was said by Judge Scott in *Armstead's case*, 11 Leigh, 663, "however willing the juror might be to trust himself, the law will not trust him."

We are of opinion that the objection to the competency of the juror Scott, as set forth in the first bill of exceptions, was well taken, and that the corporation court of Fredericksburg erred in overruling the prisoner's objection to the said venireman.

The second bill of exceptions states that upon the trial of this case, when the jurors were sworn to answer questions pro-

pounded by the court, J. W. Adams, Jr., being asked by the
court whether he had formed or expressed an opinion as to the
guilt or innocence of the prisoner, said: "I have formed an
opinion thus far, that the prisoner should be punished." And
he was asked upon what he based his opinion, and he said
from the newspapers and current reports; and the court then
asked him if his opinion was such that if he had sworn evi-
dence it would not be changed, and he answered "No," but
said it would require evidence to change his opinion, but that
he thought he could give the prisoner a fair and impartial trial.
Whereupon the prisoner objected to said juror, but the court
overruled the objection and decided that the veniremau, the
said Adams, was a competent juror. This is even a stronger
case than that of the juror Scott, already considered and dis-
posed of. The juror Adams does not even affirm, positively,
his ability to give to the prisoner a fair and impartial trial, but
says that he "thought he could give the prisoner a fair and
impartial trial."

The presumption of the law is that the accused is innocent,
yet in this case he was tried by three jurors who had formed
and expressed the opinion that he was guilty and ought to be
punished, which said preconceived opinion the accused would
have to remove.

In *Holt* v. *The People*, 13 Mich., 224, Judge Cooley said that
in criminal cases wherein, after a full examination, the testi-
mony given upon a challenge leaves a reasonable doubt of the
impartiality of the juror, the defendant shall be given the
benefit of the doubt. We think that the corporation court of
Fredericksburg erred in overruling the objection taken by the
prisoner to the competency of the juror Adams, and in hold-
ing him to be competent in the case.

The third and fourth bills of exception raise questions as to
the competency of other jurors who were decided by the court
to be competent and were allowed to act as jurors against the
objections of the prisoner. And the fifth and sixth bills of

exception set forth the objections taken by the prisoner to the selection, summoning, and impanelling of the venire, but as we are of opinion to reverse the judgment of the corporation court for the errors assigned in the first and second bills of exception, and remand the case for a new trial, it is unnecessary to decide the questions raised as to the regularity of the venire.

The judgment of this court is that the verdict of the jury be set aside, the judgment of the corporation court of Fredericksburg be reversed and annulled, and a new trial awarded the accused.

Lacy, J., dissented.

Judgment reversed.