COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Powell
Argued at Chesapeake, Virginia


DARIN MONTA SATTERWHITE

OPINION BY
v.        Record No. 0849-09-1                    JUDGE D. ARTHUR KELSEY
JULY 27, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge[1]

Michael C. Rosenblum (Duncan R. St. Clair, III; St. Clair &
Rosenblum, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Dominic Joyner was shot four times at close range.  As he faded in and out of

consciousness, he identified the shooter as Darin Satterwhite.  Joyner later died from gunshot

wounds.  A jury found Satterwhite guilty of murdering Joyner.  At trial and on appeal,

Satterwhite argues the victim's statements were inadmissible both under state evidentiary and

federal constitutional law because the victim was not present at trial and thus was unavailable for

cross-examination.  Affirming the trial court, we hold Joyner's statements constituted dying

declarations admissible under the common law and categorically outside the reach of the

Confrontation Clause of the Sixth Amendment.

I.

On October 19, 2005, Tanisha Naar left work on a lunch break and returned to her

apartment.  She found her boyfriend, Joyner, lying on her bathroom floor.  He was covered in

_____

[1] Before trial, in response to two evidentiary motions, Judge Charles D. Griffith, Jr., ruled
the victim's statements were admissible as dying declarations.  Judge Everett A. Martin, Jr., later
denied appellant's motions to reconsider and set aside the verdict on this basis.

blood.  Naar called out to Joyner, but he did not answer.  She went over to Joyner and knelt down beside him as he gasped for breath.  Joyner faded in and out of consciousness.  He appeared limp and unable to feel anything.  Because Joyner was bleeding so profusely, Naar could not identify the entry wounds.  When she asked him where he had been shot, Joyner replied, "everywhere."

Naar called 911.  Joyner had been bleeding for about half an hour by this time.  The 911 operator asked Naar what happened.  While still on the phone, Naar asked Joyner "who did it?"  Breathing heavily, Joyner replied, "Darin Satterwhite did it."  He said it loudly enough for the 911 operator to overhear the statement.  Joyner added that Satterwhite had shot him inside Naar's apartment at around 12:45 p.m.

Paramedics arrived within minutes and found Joyner conscious but in critical condition.  He had three gunshot wounds to the chest and one to the head.  Joyner had no feeling in his legs.  Police detectives also arrived on the scene.  They, too, asked Joyner what happened.  He told them Satterwhite had shot him.  The paramedics rushed Joyner to the hospital where he was admitted for emergency surgery.  The gunshots had damaged his spine and led to renal failure, liver failure, sepsis, pneumonia, rhabdomyolysis, gastrointestinal bleeding, and coagulopathy.  Joyner died in the hospital six weeks later.

At Satterwhite's jury trial, his counsel expressly denied that Joyner falsely identified Satterwhite as the shooter.  "There's no motive for him to say that falsely," counsel argued, "they were friends."  Instead, counsel asserted, Joyner was simply mistaken.  The jury disagreed and convicted Satterwhite of second-degree murder.

## II.

By admitting into evidence Joyner's statements identifying him as the shooter, Satterwhite argues, the trial court violated his right to cross-examination both under common law

hearsay principles and under the Confrontation Clause of the Sixth Amendment. We disagree with both assertions.

## A. DYING DECLARATIONS UNDER THE COMMON LAW

Unless displaced by statute or constitutional principles, the common law "shall continue in full force" and "be the rule of decision" in Virginia courts. Code § 1-200 (recodifying former Code § 1-10).[2] Though the common law generally prohibited hearsay evidence, it uniformly excepted from this general rule the dying declarations of a homicide victim. "Not surprisingly, nearly as soon as we find a hearsay rule, we also find an exception for dying declarations." 2 Kenneth S. Broun, McCormick on Evidence § 309, at 363 (6th ed. 2006). The common law admitted dying declarations when the victim found herself in a "state of mortality as would inevitably oblige her soon to answer before her Maker for the truth or falsehood of her assertions," Giles v. California, 128 S. Ct. 2678, 2685 (2008) (quoting King v. Woodcock, 168 Eng. Rep. 352, 353-54, 1 Leach 500, 503 (1789)), because the "sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath," Mattox v. United States, 156 U.S. 237, 244 (1895).[3]

---

[2] See generally Isbell v. Commercial Inv. Assocs., 273 Va. 605, 613, 644 S.E.2d 72, 75 (2007) ("The General Assembly has proclaimed, 'The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force . . . and be the rule of decision, except as altered by the General Assembly.'" (quoting Code § 1-200)); Oehl v. Oehl, 221 Va. 618, 623, 272 S.E.2d 441, 444 (1980) ("Virginia's jurisprudence is deeply rooted in the ancient precedents, procedures, and practices of the English system of justice."); Commonwealth v. Holland, 211 Va. 530, 532, 178 S.E.2d 506, 507 (1971) ("It is well settled that the common law continues in force in Virginia except as altered by statute.").

[3] "The custom of using dying declarations probably comes down as a tradition long before the evidence system arises in the 1500s . . . ." 5 John Henry Wigmore, Evidence § 1430, at 218 n.1 (3d ed. 1940); see 4 St. George Tucker, Blackstone's Commentaries 368 n.* (1803) ("In criminal cases, the declarations of a person, who relates *in extremis* or under an apprehension of dying, the cause of his death, or any other material circumstance may be

Virginia precedent fully conforms to common law principles governing dying declarations. "Without referring in detail to the numerous adjudications that have taken place in England, and in this country, upon the question, we consider it settled, that declarations in *articulo mortis* by one who is conscious of his condition, are admissible evidence" in homicide cases. Hill v. Commonwealth, 43 Va. (2 Gratt.) 594, 608 (1845).[4] It is a sufficient reason, as the English cases explain, to admit dying declarations because the "usual witness in occasions of other felonies, namely, the party injured himself, is gotten rid of." Pippen v. Commonwealth, 117 Va. 919, 925, 86 S.E. 152, 154 (1915); 1 E. East, Pleas of the Crown § 124, at 353 (1806).

To qualify as a dying declaration, the victim's statement must be made "under a sense of impending death" without any "expectation or hope of recovery" from his mortal wounds. Clark v. Commonwealth, 235 Va. 287, 291, 367 S.E.2d 483, 485 (1988) (citation omitted). But the victim need not verbalize his sense of impending death. "[S]uch words are (fortunately) not essential." Charles E. Friend, The Law of Evidence in Virginia § 18-13, at 758 (6th ed. 2003) (citing Hall v. Commonwealth, 89 Va. 171, 177, 15 S.E. 517, 519 (1893) ("It is not necessary, however, that they should be stated, at the time, to be so made.")).[5]

Consequently, "the fact of such consciousness may be established otherwise than by the statements of the decedent: as by the character and nature of the wound, his appearance and conduct, &c." Hill, 43 Va. (2 Gratt.) at 608; see, e.g., Clark v. Commonwealth, 3 Va. App. 474,

---

admitted in evidence; for the mind in that awful state is presumed to be under as great a religious obligation to disclose the truth, as is created by the administration of an oath.").

[4] See Waller v. Commonwealth, 178 Va. 294, 307, 16 S.E.2d 808, 813 (1941) (noting that Hill is the "principal case on the subject and one which has been referred to in practically all the cases subsequent thereto").

[5] Nor is it dispositive that others, including medical personnel, discount the likelihood of death. Hall v. Commonwealth, 12 Va. App. 198, 204, 403 S.E.2d 362, 366 (1991) (finding unpersuasive defendant's argument that "emergency room personnel" thought the declarant's "wound was minor"). "When considering the admissibility of dying declarations, the necessary element is a subjective one relating solely to the declarant's expectations." Id.

482, 351 S.E.2d 42, 46 (1986) (holding victim's state of mind can be inferred from the fact that he had been shot in the chest and was breathing with difficulty), aff'd on other grounds, 235 Va. 287, 367 S.E.2d 483 (1988); see generally Friend, *supra* § 18-13, at 758 (noting victim's state of mind can be inferred from the severity of the wounds and the "obvious extremity" of his condition). A trial court may also take into account "that during the whole time from the infliction of the wound until his death, [the victim] never expressed the opinion or belief that he would survive." Pippen, 117 Va. at 929, 86 S.E. at 155 (citation omitted).

Moreover, if the circumstances show a reasonable basis for the victim's sense of impending death at the time of his statements, "the length of time between the declarations and the death of the declarant is an immaterial matter." Hall, 89 Va. at 177, 15 S.E. at 519. It does not matter "that death did not ensue until a considerable time after the declarations were made" if, when made, the victim had reason to believe he faced imminent death. Swisher v. Commonwealth, 67 Va. (26 Gratt.) 963 (1875). Put another way, "the *actual period of survival* after making the declaration is immaterial. The necessary element is a subjective one — the declarant's expectation; and the subsequent duration of life, whatever it may turn out to be, has no relation to his state of mind when speaking." Batten v. Commonwealth, 190 Va. 235, 241-42, 56 S.E.2d 231, 234 (1949) (emphasis in original) (quoting 5 John Henry Wigmore, Evidence § 1441, at 235 (3d ed. 1940)).

In the trial court, the party offering the dying declaration must establish the evidentiary basis for admitting it if another party objects on hearsay grounds. See Hall v. Commonwealth, 12 Va. App. 198, 204, 403 S.E.2d 362, 366 (1991). On appeal, we review under an "abuse of discretion" standard the trial court's decision to admit or exclude evidence. Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010). Applying this standard, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the

- 5 -

record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (citation omitted). This deferential standard applies to a trial court's decision to admit statements under the dying declarations exception to the hearsay rule:

> Much weight ought always to be given to the opinion of the court below in determining this question. The duty by law is devolved on him to determine, not only from the proofs, but from all the circumstances of the case, whether the declarations are admissible. That court has all the witnesses in its presence, hears them speak, can judge of their credibility, is cognizant of all the circumstances of the case, and to its judgment the law refers the determination of the question whether the declarations were admissible.

> If that judgment is clearly erroneous, it may be reviewed like any other judgment. But . . . [t]he judgment must be clearly erroneous before it will be interfered with by the appellate court.

Swisher, 67 Va. (26 Gratt.) at 974 (citation omitted). "The circumstances of each case will show whether the requisite consciousness existed," Professor Wigmore concurs, "and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances." Wigmore, *supra* § 1442, at 238.

Governed by these principles, we find no abuse of discretion in the trial court's decision to admit Joyner's statements under the dying declaration exception to the hearsay rule. Found in a pool of blood, Joyner had taken three gunshots to the chest and one to the head. He went in and out of consciousness, was partially paralyzed, and had difficulty breathing. Though he did not verbalize a sense of death coming over him, he did not need to. "The fact that the wounds were severe is, in itself, circumstantial evidence that the declarant must have realized that there was no hope, and the obvious extremity of his condition is also evidence that he must have known what lay ahead." Friend, *supra* § 18-13, at 758 (footnote omitted). Given the severity of his injuries, we find it unremarkable that nothing in the record suggests Joyner "expressed the opinion or belief that he would survive," Pippen, 117 Va. at 929, 86 S.E. at 155 (citation omitted), at the time of his challenged statements.

Satterwhite makes much of the fact that Joyner did not die immediately. Emergency medical care kept him alive for several weeks following the shooting. Like the trial court, we find this observation misses the point. To be sure, "there seems to be no case in which the time of survival was deemed to exclude the declaration; and various periods have been passed upon as not too long." 5 Wigmore, *supra* § 1441, at 235; see Batten, 190 Va. at 242, 56 S.E.2d at 234-35; Hall, 89 Va. at 177, 15 S.E. at 519; Swisher, 67 Va. (26 Gratt.) at 970-71. It is an immaterial fortuity that modern medicine extended Joyner's life as long as it did, particularly given the extent of his injuries. The only issue is whether his *in extremis* condition at the time of his statements warranted the trial court's conclusion that they came within the scope of the dying declaration exception. Because "[m]uch weight ought always to be given to the opinion of the court below in determining this question," Swisher, 67 Va. (26 Gratt.) at 974, and sufficient evidence supports the trial court's conclusion, we find no basis for overturning the court's exercise of discretion in this case.[6]

## B. THE CONFRONTATION CLAUSE & DYING DECLARATIONS

Citing Crawford v. Washington, 541 U.S. 36 (2004), Satterwhite argues the trial court violated his rights under the Confrontation Clause of the Sixth Amendment. He contends Joyner's statements were both accusatorial and testimonial under Crawford and its progeny. If Crawford applied, we might agree. We hold it does not.

Virginia settled this issue 150 years ago in Hill v. Commonwealth, 43 Va. (2 Gratt.) 594 (1845). In that case, the appellant argued "[t]hat the admission of the dying declarations in evidence, is a violation of the [Virginia] bill of rights: the 8th article of which secures to every

---

[6] Given our holding we need not address whether Joyner's statements fit with the excited utterance exception to the hearsay rule. See Clark, 235 Va. at 292, 367 S.E.2d at 486 (addressing whether a "homicide victim's statement made a short time after he has been mortally wounded" fits within the "excited utterance" exception); Huffman v. Commonwealth, 168 Va. 668, 681, 190 S.E. 265, 271 (1937).

citizen charged with crime the right to be confronted with the witnesses against him." Id. at 597.

Rejecting this argument, Hill found it wholly incompatible with tradition and history:

> Is such evidence contrary to the bill of rights? If this question is to be answered affirmatively, then for nearly 70 years past, the Courts of this Commonwealth have been in the constant practice of violating the bill of rights in a most important particular. We admit that the practice of the Courts, however long, and uniform, is not of itself a valid answer to the objection; and that this Court is bound to decide it now; not upon practice, but upon principle.

> \* \* \* \* \* \* \*

> The question then arises, what was the doctrine of the common law as it regarded this rule of evidence? Without attempting to ascertain the antiquity of the earliest decisions of the British Courts affirming the rule, it is sufficient to state, that long anterior to the year 1776, the period of the declaration of the bill of rights, the rule of evidence was well established. And it is remarkable, that in all the commentaries it underwent in England, it was never supposed that the rule was a violation of the rights of the subject as secured by Magna Charta [sic]. The rule is one of necessity. . . . We are therefore of opinion, that the admission of dying declarations as evidence, is not repugnant to the bill of rights.

Hill, 43 (2 Gratt.) Va. at 607-08. See Robertson v. State, 142 S.W. 533, 544 (Tex. Crim. App. 1911) (noting "the Virginia court adheres to the rule announced in all the other States, that if the testimony was admissible in England at the date of the Declaration of Independence the testimony is admissible, and is not violative of the Constitution").

Interpreting the Federal Bill of Rights (which the Framers based in large part on the Virginia Declaration of Rights adopted over a decade earlier),[7] the United States Supreme Court

---

[7] "The Virginia Declaration of Rights was the first true Bill of Rights in the modern American sense, since it is the first protection for the rights of the individual contained in a Constitution adopted by the people acting through an elected convention. . . . [I]ts importance as the source of the federal Bill of Rights may not be overemphasized. . . . Every specific guarantee in the Virginia proposal, save one, later found a place in the federal Bill of Rights which was introduced in the first Congress by Madison as proposed by Virginia herself. Among those was the right 'to be confronted with the accusers and witnesses,' a lineal descendant of the phrase in the Virginia Declaration." United States v. Payne, 492 F.2d 449, 459-60 (4th Cir. 1974) (Widener, J., concurring and dissenting).

came to a similar conclusion in <u>Mattox v. United States</u>, 156 U.S. 237 (1895).  Its analysis began with the observation that "[m]any of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit."  <u>Id.</u> at 243.  As an example, <u>Mattox</u> pointed to dying declarations.  "[F]rom time immemorial," <u>Mattox</u> declared, dying declarations "have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility.  They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice."  <u>Id.</u> at 243-44.

The question remains whether <u>Crawford</u> shifted the legal paradigm so profoundly as to render this longstanding precedent unreliable.  We think not.  For all its novelty, <u>Crawford</u>'s holding left intact many aspects of the conventional understanding of the Confrontation Clause.  <u>See</u>, <u>e.g.</u>, <u>Blackman v. Commonwealth</u>, 45 Va. App. 633, 644, 613 S.E.2d 460, 466 (2005) (holding "<u>Crawford</u> confirms the traditional view that the Confrontation Clause 'does not bar admission of a statement so long as the declarant is present at trial to defend or explain it'" (citation omitted)).  To be sure, though <u>Crawford</u> did not involve dying declarations, it made a point of steering clear of the subject by acknowledging:  "Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. . . .  If this exception must be accepted on historical grounds, it is *sui generis*."  <u>Crawford</u>, 541 U.S. at 56 n.6.

In a later application of <u>Crawford</u>, the Court stated it had "previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted."  <u>Giles</u>, 128 S. Ct. at 2682.  "The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying."  <u>Id.</u> at 2682-83 (citing

with approval, among other cases, <u>King v. Commonwealth</u>, 4 Va. 78, 80-81 (Gen. Ct. 1817)).

Like <u>Mattox</u>, <u>Giles</u> accepted in *dicta* that dying declarations fit "within this historic exception." <u>Id.</u> at 2683.[8]  For these reasons, we hold <u>Crawford</u> did not upend the traditional view that dying declarations serve as an exception both to the common law hearsay rule and the constitutional right of a defendant to confront his accusers.[9]

### III.

The trial court did not err in admitting into evidence Joyner's statements identifying Satterwhite as the shooter.  We thus affirm Satterwhite's conviction.

<u>Affirmed.</u>

---

[8] The <u>Giles</u> *dicta* did not attempt to define the precise boundaries of the dying declaration exception, and we see no reason to believe <u>Giles</u> in any way affects the traditional view of the exception applied by Virginia courts.

[9] <u>Accord</u> <u>People v. Monterroso</u>, 101 P.3d 956, 971-72 (Cal. 2004); <u>Cobb v. State</u>, 16 So. 3d 207, 212 (Fla. Dist. Ct. App. 2009); <u>Walton v. State</u>, 603 S.E.2d 263, 265-66 (Ga. 2004); <u>People v. Gilmore</u>, 828 N.E.2d 293, 302 (Ill. App. Ct. 2005); <u>Wallace v. State</u>, 836 N.E.2d 985, 996 (Ind. Ct. App. 2005); <u>State v. Jones</u>, 197 P.3d 815, 822 (Kan. 2008); <u>Commonwealth v. Nesbitt</u>, 892 N.E.2d 299, 311 (Mass. 2008); <u>People v. Taylor</u>, 737 N.W.2d 790, 795 (Mich. Ct. App. 2007); <u>State v. Martin</u>, 695 N.W.2d 578, 585 (Minn. 2005); <u>Harkins v. State</u>, 143 P.3d 706, 711 (Nev. 2006); <u>State v. Calhoun</u>, 657 S.E.2d 424, 428 (N.C. Ct. App. 2008); <u>State v. Lewis</u>, 235 S.W.3d 136, 148 (Tenn. 2007); <u>State v. Beauchamp</u>, 781 N.W.2d 254, 258-59 (Wis. Ct. App. 2010).  <u>But</u> <u>see</u> <u>United States v. Mayhew</u>, 380 F. Supp. 2d 961, 965 (S.D. Ohio 2005).