## UNITED STATES v. DOREMUS.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 367. Submitted January 16, 1919.—Decided March 3, 1919.

While Congress may not exert authority which is wholly reserved to the States, the power conferred by the Constitution to levy excise taxes, uniform throughout the United States, is to be exercised at the discretion of Congress; and, where the provisions of the law enacted have some reasonable relation to this power, the fact that they may have been impelled by a motive, or may accomplish a purpose, other than the raising of revenue, cannot invalidate them; nor can the fact that they affect the conduct of a business which is subject to regulation by the state police power. P. 93.

The Narcotic Drug Act of December 17, 1914, c. 1, 38 Stat. 785, § 1, requires those who produce, import, manufacture, compound, deal in, dispense, sell, distribute or give away opium or coca leaves, or their compounds, derivatives, etc., to register and pay a special tax. Section 2 makes sales, etc., of these drugs unlawful except to persons who give orders on forms issued by the Commissioner of Internal Revenue, which orders must be preserved for official inspection; forbids any person to obtain the drugs by means of such order forms for any purpose other than the use, sale or distribution thereof by him in the conduct of a lawful business therein, or the legitimate practice of his profession; but declares that it does not apply (a) to the dispensing or distributing of the drugs to patients by physicians registered under the act, in the course of professional practice only, provided the physicians keep certain records for official inspection, or (b) to sales, etc., by dealers upon prescriptions issued by registered physicians, provided the dealers preserve the prescriptions for like inspection. Held, that the provisions of § 2 have a reasonable relation to the enforcement of the tax provided by § 1 (which is clearly unobjectionable), and do not exceed the power of Congress. P. 94.

246 Fed. Rep. 958, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Porter* and *Mr. W. C. Herron* for the United States:

A reading of the indictment shows that the first two counts and each succeeding two counts must be read together in order to make out the offense intended to be charged.

Looking at § 2 of the act, in connection with the title and all the other provisions thereof, it is clear that the key to its meaning is in the distinction made between producers of, and dealers in, these drugs, on the one hand, and consumers of them on the other. The former must register and pay the special tax; the latter not. The incidence of the tax is placed upon the former by the title of the act, and by its first section, while the latter are not directly dealt with by the act at all. This distinction is believed to be fundamental. Assuming it to be the practical object in the mind of Congress, the natural end to be accomplished by the act in this connection would be to see that the drugs in question, in so far as the incidence of the tax upon them was concerned, came really and honestly into the hands of consumers, and did not, through the passport of a druggist or doctor, come into the hands of a dealer who would not register, would not pay the special tax, and whose dealings would not be supervised by the Bureau of Internal Revenue. The facility with which they may be transferred, and the ease therefore with which the tax upon dealers may be evaded are evident, and therefore methods and means, which seem at first drastic, may nevertheless be properly deemed by Congress necessary to secure the assessment of all producers and dealers, while relieving genuine consumers.

Congress, consequently, provided for the producers and dealers in the provisions of §§ 1 and 2. It required the transferrer and the transferee both to register in the normal case, and to pay the tax, and to use official order forms in their dealings with each other, so as to secure that both should so register and pay the tax.

It recognized, however, consumers in paragraphs *(a)*

and (*b*) of § 2.  It permitted the sale of the drugs to them
either from a physician directly or from him indirectly
through a prescription to a druggist.  In order, however,
to prevent frauds on the revenue by the obtaining of the
drugs under the guise of *bona fide* consumers by persons
who in truth intended to deal in them without registering
and paying the special tax, it required that physicians
dispensing the drugs directly should do so only to "pa-
tients" treated in the course of professional practice, and
that druggists should dispense the drugs only on "pre-
scriptions" issued by physicians, and that neither of them
should procure the drugs on order forms for any purpose
other than the distribution of them to *bona fide* consum-
ers—that is, genuine patients of a physician.  The act
thus looked at hangs together.  It is true, of course, that
it also had the moral purpose of discouraging the use of
the drugs except as a medicine, but its main purpose as a
revenue measure was to see that dealers in the drugs do
not escape the tax.

Counsel then instanced, as well-known examples of
the use of the taxing power in connection with social or
moral ends, the protective tariff system; the tax on for-
eign-built yachts, *Billings* v. *United States*, 232 U. S.
261; on dealers in liquors and lottery tickets, *License Tax
Cases*, 5 Wall. 462; on notes of state banks, *Veazie Bank*
v. *Fenno*, 8 Wall. 533; on importation of alien passengers,
*Head Money Cases*, 112 U. S. 580; graduation of taxes,
*Magoun* v. *Bank*, 170 U. S. 283; *Knowlton* v. *Moore*, 178
U. S. 41; *Brushaber* v. *United States*, 240 U. S. 1; on oleo-
margarine, *In re Kollock*, 165 U. S. 526; *McCray* v. *United
States*, 195 U. S. 27; on sugar refiners, *American Sugar
Refining Co.* v. *Louisiana*, 179 U. S. 89.  On the right to
exempt certain classes of dealers, *United States* v. *Cal-
houn*, 39 Fed. Rep. 604; *Cook* v. *Marshall County*, 196
U. S. 261.  And see *Mountain Timber Co.* v. *Washington*, 243
U. S. 219; *United States* v. *Jin Fuey Moy*, 241 U. S. 394.

The same presumption prevails in favor of the constitutionality of the means adopted by Congress to effectuate its exercise of the taxing power as prevails regarding the exercise of the power itself. Where Congress has acted clearly in the exercise of its taxing power, the means employed to effectuate this legitimate functioning are in their nature practical, belonging to the field of experiment and experience, and outside of the field of judicial knowledge. Hence, if it once be determined that the main provision of the act levying the tax and defining its incidence is constitutional, the means devised by Congress for the collection of the tax and the prevention of frauds in connection with it will, except in the most extraordinary case, be held to be within the proper scope of the legislative power. *In re Kollock, supra; McCray* v. *United States, supra; Nicol* v. *Ames,* 173 U. S. 509; *Felsenheld* v. *United States,* 186 U. S. 126; *United States* v. *132 Packages,* 76 Fed. Rep. 362; *United States* v. *Dewitt,* 9 Wall. 41; *United States* v. *Jin Fuey Moy, supra.* Counsel also cited *Blunt* v. *United States,* 255 Fed. Rep. 332; *Baldwin* v. *United States,* 238 Fed. Rep. 793; *United States* v. *Rosenberg,* 251 Fed. Rep. 963; *Foreman* v. *United States,* 255 Fed. Rep. 621; and *Hughes* v. *United States,* 253 Fed. Rep. 543, dealing with the act of Congress in question.

No appearance for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

Doremus was indicted for violating § 2 of the so-called Harrison Narcotic Drug Act. 38 Stat. 785; 6 U. S. Comp. Stats. 1916, § 6287g. Upon demurrer to the indictment the District Court held the section unconstitutional for the reason that it was not a revenue measure, and was an invasion of the police power reserved to the States. 246 Fed. Rep. 958. The case is here under the Criminal Appeals Act, 34 Stat. 1246.

There are ten counts in the indictment. The first two were treated by the court below as sufficient to raise the constitutional question decided. The first count in substance charges that: Doremus, a physician, duly registered, and who had paid the tax required by the first section of the act, did unlawfully, fraudulently, and knowingly sell and give away and distribute to one Ameris a certain quantity of heroin, to wit, five hundred one-sixth grain tablets of heroin, a derivative of opium, the sale not being in pursance of a written order on a form issued on the blank furnished for that purpose by the Commissioner of Internal Revenue.

The second count charges in substance that: Doremus did unlawfully and knowingly sell, dispense and distribute to one Ameris five hundred one-sixth grain tablets of heroin not in the course of the regular professional practice of Doremus, and not for the treatment of any disease from which Ameris was suffering, but as was well known by Doremus, Ameris was addicted to the use of the drug as a habit, being a person popularly known as a "dope fiend," and that Doremus did sell, dispense, and distribute the drug, heroin, to Ameris for the purpose of gratifying his appetite for the drug as an habitual user thereof.

Section 1 of the act requires persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves or any compound, manufacture, salt, derivative or preparation thereof, to register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on. At the time of such registry every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the said drugs, is required to pay to the collector a special tax of $1.00 per annum. It is made unlawful for any person required to register

under the terms of the act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the said drugs without having registered and paid the special tax provided in the act.

Section 2 provides in part:

"It shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. Every person who shall accept any such order, and in pursuance thereof shall sell, barter, exchange, or give away any of the aforesaid drugs, shall preserve such order for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employee of the Treasury Department duly authorized for that purpose, and the State, Territorial, District, municipal, and insular officials named in section five of this Act. Every person who shall give an order as herein provided to any other person for any of the aforesaid drugs shall, at or before the time of giving such order, make or cause to be made a duplicate thereof on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue, and in case of the acceptance of such order, shall preserve such duplicate for said period of two years in such a way as to be readily accessible to inspection by the officers, agents, employees, and officials hereinbefore mentioned. Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this Act in the course of his professional practice only: *Provided,* That such physician, dentist, or veterinary surgeon shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the

name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist or veterinary surgeon shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in this Act.

"(b) To the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this Act: *Provided, however,* That such prescription shall be dated as of the day on which signed and shall be signed by the physician, dentist, or veterinary surgeon who shall have issued the same: *And provided further,* That such dealer shall preserve such prescription for a period of two years from the day on which such prescription is filled in such a way as to be readily accessible to inspection by the officers, agents, employees, and officials hereinbefore mentioned."

It is made unlawful for any person to obtain the drugs by means of the order forms for any purpose other than the use, sale or distribution thereof by him in the conduct of a lawful business in said drugs, or the legitimate practice of his profession.

It is apparent that the section makes sales of these drugs unlawful except to persons who have the order forms issued by the Commissioner of Internal Revenue, and the order is required to be preserved for two years in such way as to be readily accessible to official inspection. But it is not to apply (a) to physicians, etc., dispensing and distributing the drug to patients in the course of professional practice, the physician to keep a record thereof, except in the case of personal attendance upon a patient; and (b) to the sale, dispensing, or distributing of the drugs by a dealer upon a prescription issued by a physician, etc.,

registered under the. act.   Other exceptions follow which are unnecessary to the consideration of this case.

Section 9 inflicts a fine or imprisonment, or both ꜰor violations of the act.

This statute purports to be passed under the authority of the Constitution, Article I, § 8, which gives the Congress power "To lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

The only limitation upon the power of Congress to levy excise taxes of the character now under consideration is geographical uniformity throughout the United States. This court has often declared it cannot add others.   Subject to such limitation Congress may select the subjects of taxation, and may exercise the power conferred at its discretion.     *License Tax Cases,* 5 Wall. 462, 471.   Of course Congress may not in the exercise of federal power exert authority wholly reserved to the States.   Many decisions of this court have so declared.   And from an early day the court has held that the fact that other motives may impel the exercise of federal taxing power does not authorize the courts to inquire into that subject. If the legislation enacted has some reasonable relation to the exercise of the taxing authority conferred by the Constitution, it cannot be invalidated because of the supposed motives which induced it.  *Veazie Bank* v. *Fenno,* 8 Wall. 533, 541, in which case this court sustained a tax on a state bank issue of circulating notes.  *McCray* v. *United States,* 195 U. S. 27, where the power was thoroughly considered, and an act levying a special tax upon oleomargarine artificially colored was sustained.   And see *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 147, 153, 156, and cases cited.

Nor is it sufficient to invalidate the taxing authority

given to the Congress by the Constitution that the same business may be regulated by the police power of the State. *License Tax Cases,* 5 Wall., *supra.*

The act may not be declared unconstitutional because its effect may be to accomplish another purpose as well as the raising of revenue. If the legislation is within the taxing authority of Congress—that is sufficient to sustain it. *In re Kollock,* 165 U. S. 526, 536.

The legislation under consideration was before us in a case concerning § 8 of the act, and in the course of the decision we said: "It may be assumed that the statute has a moral end as well as revenue in view, but we are of opinion that the District Court, in treating those ends as to be reached only through a revenue measure and within the limits of a revenue measure, was right." *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 402. Considering the full power of Congress over excise taxation the decisive question here is: Have the provisions in question any relation to the raising of revenue? That Congress might levy an excise tax upon such dealers, and others who are named in § 1 of the act, cannot be successfully disputed. The provisions of § 2, to which we have referred, aim to confine sales to registered dealers and to those dispensing the drugs as physicians, and to those who come to dealers with legitimate prescriptions of physicians. Congress, with full power over the subject, short of arbitrary and unreasonable action which is not to be assumed, inserted these provisions in an act specifically providing for the raising of revenue. Considered of themselves, we think they tend to keep the traffic aboveboard and subject to inspection by those authorized to collect the revenue. They tend to diminish the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax imposed by the federal law. This case well illustrates the possibility which may have induced Congress to insert

the provisions limiting sales to registered dealers and requiring patients to obtain these drugs as a medicine from physicians or upon regular prescriptions. Ameris, being as the indictment charges an addict, may not have used this great number of doses for himself. He might sell some to others without paying the tax, at least Congress may have deemed it wise to prevent such possible dealings because of their effect upon the collection of the revenue.

We cannot agree with the contention that the provisions of § 2, controlling the disposition of these drugs in the ways described, can have nothing to do with facilitating the collection of the revenue, as we should be obliged to do if we were to declare this act beyond the power of Congress acting under its constitutional authority to impose excise taxes. It follows that the judgment of the District Court must be reversed.

*Reversed.*

THE CHIEF JUSTICE dissents because he is of opinion that the court below correctly held the act of Congress, in so far as it embraced the matters complained of, to be beyond the constitutional power of Congress to enact because to such extent the statute was a mere attempt by Congress to exert a power not delegated, that is, the reserved police power of the States.

MR. JUSTICE MCKENNA, MR. JUSTICE VAN DEVANTER and MR. JUSTICE MCREYNOLDS concur in this dissent.