## SONZINSKY v. UNITED STATES. *

### No. 5908.

Circuit Court of Appeals, Seventh Circuit.

Nov. 9, 1936.

Rehearing Denied Dec. 2, 1936.

John M. Karns, of East St. Louis, Ill., and Harold J. Bandy, of Granite City, Ill., for appellant.

Arthur Roe, U. S. Atty., and Grendel F. Bennett, Asst. U. S. Atty., both of Danville, Ill., for the United States.

*Writ of certiorari granted 57 S. Ct. 486, 81 L.Ed. —.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

BRIGGLE, District Judge.

The defendant (appellant here) stands convicted in the lower court on two counts of an indictment, charging violation of the National Firearms Act, 26 U.S.C.A. §§ 1132–1132q.

The first count charged that defendant, on April 9, 1936, unlawfully carried on the business of a dealer in firearms at 453 Collinsville avenue, East St. Louis, Ill., without having paid the special tax therefor as required by section 2 of the act (26 U.S.C.A. § 1132a).

The second count charged that defendant unlawfully received and had in his possession a certain firearm, to wit, a sawed-off shotgun with a 15⅞ inch barrel, which had come into his possession not in pursuance of a written order from the said defendant on application upon a blank, in duplicate, issued by the Commissioner of Internal Revenue.

The sections of the act particularly pertinent to the inquiry at hand are sections 1 (a), 2, 4, and 6 (26 U.S.C.A. §§ 1132 (a), 1132a, 1132c, 1132e), and are appended in a footnote.[1]

The errors assigned challenge the sufficiency of the evidence to support the

---

[1] Sec. 1(a) The term "firearm" means a shotgun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition. * * *

Sec. 2(a) Within fifteen days after the thirtieth day after June 26, 1934, or upon first engaging in business, and thereafter on or before the 1st day of July of each year, every importer, manufacturer, and dealer in firearms shall register with the collector of internal revenue for each district in which such business is to be carried on his name or style, principal place of business, and places of business in such district, and pay a special tax at the following rates: Importers or manufacturers, $500 a year; dealers, other than pawnbrokers, $200 a year; pawnbrokers, $300 a year. Where the tax is payable on the 1st day of July in any year it shall be computed for one year; where the tax is payable on any other day it shall be computed proportionately from the 1st day of the month in which the liability to the tax accrued to the 1st day of July following.

(b) It shall be unlawful for any person required to register under the provisions of this section to import, manufacture, or deal in firearms without having registered and paid the tax imposed by this section. * * *

Sec. 4(a) It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Commissioner. Such order shall identify the

applicant by such means of identification as may be prescribed by regulations under sections 1 to 18 [sections 1132 to 1132q]: Provided, That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

(b) The Commissioner, with the approval of the Secretary, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue.

(c) Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Commissioner. The original thereof with stamps affixed, shall be returned to the applicant.

(d) No person shall transfer a firearm which has previously been transferred on or after the thirtieth day after June 26, 1934, unless such person, in addition to complying with subsection (c), transfers therewith the stamp-affixed order provided for in this section for each such prior transfer, in compliance with such regulations as may be prescribed under sections 1 to 18 [sections 1132 to 1132q] for proof of payment of all taxes on such firearms.

(e) If the transfer of a firearm is exempted from the provisions of sections 1 to 18 [sections 1132 to 1132q] as provided in section 13 [section 1132l], the person transferring such firearm shall notify the Commissioner of the name and address of the applicant, the number or other mark identifying such firearm, and the date of its transfer, and shall file with the Commissioner such documents in proof thereof as the Commissioner may by regulations prescribe.

(f) Importers, manufacturers, and dealers who have registered and paid the tax as provided for in section 2(a) [sec-

charges in the indictment and assert the unconstitutionality of the act.

*Sufficiency of the Evidence.* The entire evidence submitted to the jury consisted of the testimony of four witnesses and the introduction in evidence of the gun in question. The testimony of witnesses Le Grand and Dowling concerned their visit to defendant's store on April 9, 1936, at the address indicated in the indictment, a place where defendant had for sale various items of hardware, heaters for automobiles, tools, light fixtures, guns, and other items usually carried in a small store. Upon inquiry he showed witnesses different shotguns and later inquired if they would be interested in a Winchester, sawed-off pump gun. Upon advice that they would, he produced such gun which was sold to witness for $10 (this was the gun on which count 2 was predicated). The witness Hart testified that the length of the barrel of this gun was 15⅝ inches. The only other witness was L. J. Wahl whose entire testimony as shown by the record was as follows:

"My name is L. J. Wahl. I live in Springfield, Illinois, I am a clerk in the Internal Revenue Department and have been for seventeen years. I have charge of the registration of firearms in this State. We receive all applications for registration, all applications for special taxes from dealers and pawn-brokers and for the transfer of firearms. Max Sonzinsky is not registered in my office as a dealer in firearms. There is no one registered from 453 Collinsville Avenue, East St. Louis. Max Sonzinsky has not obtained application blanks for the transfer of sawed-off shot guns. Max Sonzinsky has not ever filed a certificate of registration with the Collector of Internal Revenue of this particular sawed-off shot gun, marked Government's Exhibit 'A' or any sawed-off shot gun. This is the Eighth Internal Revenue District, and it includes St. Clair County."

While the evidence bearing upon the question of whether defendant was a dealer in firearms within the meaning of the act was meager, yet we think that, under the careful and accurate instructions given by the court on this question, there was competent evidence for the jury to consider and upon which they might properly conclude that defendant was a dealer in firearms within the meaning of the act, and that he had not paid the tax as provided in section 2, as charged in the first count of the indictment.

The charge in the second count was laid under section 6 of the act (26 U.S. C.A. § 1132e), making it unlawful for defendant to receive or possess the gun in question if it had been transferred in violation of sections 3 or 4 (26 U.S.C.A. §§ 1132b, 1132c). The charge in this count, however, is narrower than the terms of section 6, in that it only charges that he possessed a gun in violation of section 4, that is, that the same "had come into his possession not in pursuance of a written order from the said (defendant) on application upon a blank, in duplicate, issued by the Commissioner of Internal Revenue." The only possession of the gun that the evidence supports was the possession of defendant on April 9, 1936 (this appears to be conceded), and consequently any "transfer" of the gun antedating that time, without a written order from the defendant in violation of section 4, would constitute an offense under the second count. The important inquiry then is, whether the evidence supports the charge that the gun had been transferred without a written order and in violation of section 4. The only evidence in the record, even remotely relating to this question, is the testimony of the witness Wahl wherein he says, "Max Sonzinsky has not obtained application blanks for the transfer of sawed-off shot guns." [2]

Surely it cannot be concluded that, because the defendant had not obtained from

---

tion 1132a(a)] shall not be required to conform to the provisions of this section with respect to transactions in firearms with dealers or manufacturers if such dealers or manufacturers have registered and have paid such tax, but shall keep such records and make such reports regarding such transactions as may be prescribed by regulations under sections 1 to 18 [sections 1132 to 1132q.].

Sec. 6. It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section 3 or 4 [section 1132b or 1132c].

[2] The witness' statement that defendant had not filed a certificate of registration with the collector of this gun was in support of count 3 of the indictment which charged a failure to register in violation of section 5, and which count was taken from the jury. This statement had no bearing upon the charge in count 2.

the collector "application blanks" for the transfer of sawed-off shotguns, therefore the gun was transferred without a written order. It must be borne in mind that it was his possession as a transferee that was alleged to be unlawful and he was charged with no violation of the act as a transferor of the gun. Subdivision (a) of section 4 does not in terms place any burden upon either the transferor or transferee to obtain "application forms." It provides that "It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Commissioner." It also provides for proper identification, and later subdivisions provide that the Commissioner shall furnish suitable forms to be distributed to the collectors, provides for details in filling out such orders and for forwarding a copy to the Commissioner and the original to the applicant.

The "written order" contemplated by the act is an order to be given by the prospective transferee to the transferor. Such "order" form is to be made up in part from information to be furnished by the transferee and part from information to be supplied by the transferor, and, when completed, the burden is placed upon the transferor to forward the same to the Commissioner. This is completely borne out by Regulations 88 issued by the Commissioner of Internal Revenue pursuant to section 12 of the act (26 U.S.C.A. § 1132k). No great significance can be attached to the proof that defendant "had not obtained application blanks for the transfer of sawed-off shot guns."

We assume that it might well be that the person who had such articles for sale would provide the necessary implements for effecting a lawful transfer of the same, including the blank for the "written order" from the prospective purchaser. In any event the mere proof that defendant had not obtained blanks from the collector fell far short of proof that such firearm had been transferred "not in pursuance of a written order," as charged in the second count of the indictment. We think, therefore, that the proof fails to support the conviction under the second count.

*The Constitutional Question.* In view of our disposition of the fact question and its controlling application to count 2 of the indictment, our consideration of the constitutional question will be limited in its scope to the first count of the indictment. This count charges in simple language the violation of section 2 of the act in that defendant is charged with carrying on the business of a dealer in firearms without payment of the special tax of $200 per annum therefor.

The entire argument in support of the asserted invalidity of the act is directed at the act as a whole without regard to the well-recognized principle that courts will, if possible, sustain the valid portions of an act without striking down the legislation as a whole, if such a result may be reached without destroying the purpose of the act and without doing violence to the legislative intention. The argument is advanced also without consideration of section 16 of the act (26 U.S.C.A. § 1132o), which provides that, "If any provision of sections 1 to 18 [sections 1132 to 1132q], or the application thereof to any person or circumstance, is held invalid, the remainder of sections 1 to 18 [sections 1132 to 1132q], and the application of such provision to other persons or circumstances, shall not be affected thereby."

Upon the facts before us we may safely assume that, if the constitutional validity of the act is to be sustained, the congressional authority must be found in the taxing power of Congress under article 1, § 8, of the Constitution. The authority of Congress to levy taxes is a broad one and has from the earliest time been a much controverted question before the court of last resort. The legal principles surrounding the exercise of such authority have found expression in a long line of cases. The congressional power has been sustained in the following leading cases: Veazie Bank v. Fenno, 8 Wall. 533, 548, 19 L.Ed. 482; In re Kollock, 165 U.S. 526, 17 S.Ct. 444, 41 L.Ed. 813; McCray v. U.S., 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312; U. S. v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493.

The acts of Congress were held to be outside the constitutional authority in the following cases: Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L. Ed. 817, 21 A.L.R. 1432; Linder v. U. S., 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; U. S. v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551; Schecter Poultry Corp. v. U. S., 295 U.S. 495, 55

S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; U. S. v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas.1918E, 724; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160; U. S. v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233.

It is alleged that the only real purpose of the act before us is the suppression of crime and that the imposition of a tax is but a pretended purpose; that it clearly invades the police power of the states and as a tax measure is but a sham and a subterfuge; that, conceding its beneficent aims, its purpose is purely penal and aimed at suppression of crime and not the raising of revenue.

The early case of Veazie Bank v. Fenno, supra, recognized the principle that "the judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers," even though they may be exercised oppressively, adding that "the responsibility of the legislature is not to the courts, but to the people by whom its members are elected. So if a particular tax bears heavily * * * it cannot, for that reason only, be pronounced contrary to the Constitution." This principle was recognized by former Chief Justice Taft in denying the legislative power to tax a factory 10 per cent. of its net profits if it employed children under 14 years of age in the Child Labor Tax Case, Bailey v. Drexel Furniture Company, supra.

Justice Taft distinguishes Veazie v. Fenno, Flint v. Stone Tracy Co., McCray v. United States, and United States v. Doremus by concluding that each of the prior acts, superficially, at least, was nothing but a tax measure. The language used, and the method of administration provided, created no doubt but that Congress intended to collect a bona fide tax. While in the Child Labor Tax Case he finds it apparent from the face of the act that prohibition and regulation were the prime considerations which prompted enactment. The Supreme Court has not retracted this stand in its recent decisions in Schecter v. United States, United States v. Butler, and Carter v. Carter Coal Co., supra.

The consensus of opinion to be gained from all of the decisions hereinbefore referred to is that courts are not at liberty, by reason of the supposed excessiveness of the tax alone, to invalidate taxing statutes but, where the end sought was plainly regulation of a business outside the congressional authority, as it was in the Child Labor Tax Case and many subsequent cases, no matter how worthy, the court's duty to prevent encroachment upon the Constitution is plain.

The act in question is entitled "An Act To provide for the taxation of manufacturers, importers, and dealers in certain firearms and machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof," and thus evidences no announced purpose outside the constitutional authority. Section 2 is unusually free from *regulative* provisions, merely providing for a tax in varying amount upon different classifications of persons and requiring such persons to register their names and addresses and making it unlawful for them to engage in or continue such business without having registered or paid such tax.

The tax thus imposed under section 2 can reasonably be said to be for the purpose of producing revenue—it cannot even be said to be unreasonable in requiring a dealer to register and pay a tax of $200 per annum. It is unimportant, under such circumstances, that such levy may at the same time impose a degree of regulation.

Section 2, when read in connection with section 1, giving meaning to the terms employed, is complete and not dependent upon other succeeding sections of the act. See discussion in Carter v. Carter Coal Co., supra.

"A statute must be construed if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." U. S. v. Jin Fuey Moy, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061, Ann.Cas.1917D, 854; U. S. v. Standard Brewery, 251 U. S. 210, 40 S. Ct. 139, 64 L.Ed. 229; Baender v. Barnett, 255 U.S. 224, 41 S.Ct. 271, 65 L.Ed. 597; U. S. v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551.

On the authority of United States v. Doremus, supra, the District Court of Florida held the act constitutional in the case of United States v. Adams et al., 11 F.Supp. 216.

We hold that section 2 of the act upon which count 1 of the indictment is based is valid. As to the constitutionality of

other sections of the act we express no opinion.

The judgment upon count 1 is affirmed, and the judgment upon count 2 is reversed.