**UNITED STATES ex rel. DE LUCA**

v.

**O'ROURKE.**

No. 14995.

United States Court of Appeals
Eighth Circuit.

June 17, 1954.

Rehearing Denied July 14, 1954.

R. T. Brewster, Kansas City, Mo. (Hunt C. Moore, Kansas City, Mo., on the brief), for appellant.

Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., and William O. Russell, Asst. U. S. Atty., Joplin, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

Giuseppe (Joseph) DeLuca, an alien in custody under a warrant for deportation issued October 15, 1953, by the Acting District Director, Kansas City District, Immigration and Naturalization Service, Department of Justice, petitioned the District Court for release on habeas corpus. The court issued an order to show cause directed to the respondent, J. L. O'Rourke, District Director, United States Immigration and Naturalization Service, Department of Justice (appellee). After his response to the order and after a hearing, the court denied and dismissed the petition. DeLuca has appealed.

The order for the deportation of DeLuca, in so far as it was sustained by the Board of Immigration Appeals, was based upon findings of the Special Inquiry Officer of the Immigration and Naturalization Service who conducted the deportation hearing, that DeLuca was an alien who had twice been convicted and sentenced for violating the law relating to the importation and sale of narcotic drugs and who was therefore subject to deportation under Section 241 (a) (11) of the Immigration and Nationality Act, 66 Stat. 163 et seq., effective December 24, 1952, 8 U.S.C.A. § 1251 (a) (11). Section 241(a) (11) provides as follows:

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

* * * * * *

"(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, or who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, produc-

tion, compounding, transportation, sale, exchange, dispensing, giving away, importation or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate".

DeLuca, a sixty-year old alien, had first come to the United States in 1910 from Italy, where he was born, and had last entered the United States in 1934 from Italy as a returning resident. Two judgments of conviction were entered against him on March 27, 1943, in the United States District Court for the Western District of Missouri, one based upon the verdict of a jury finding him guilty under an indictment, based on 21 U.S.C. (1940 Ed.) § 174, the "Narcotic Drugs Import and Export Act", charging him and others with the concealment of narcotic drugs, knowing them to have been imported unlawfully into the United States; the other conviction based on his plea of guilty to an indictment under the same statute,[1] charging him and others with the sale of narcotic drugs, knowing them to have been unlawfully imported into the United States. The District Court sentenced DeLuca to three years imprisonment for each offense, the sentences to be served concurrently.

DeLuca admitted that he was an alien who had been convicted of violations of law relating to the illicit traffic in narcotic drugs. One of his main contentions in the District Court in the habeas corpus proceedings was that, under an agreement with the United States Attorney whereby DeLuca was to forego an appeal from the judgment of conviction entered upon the jury verdict under the first indictment and was to enter a plea of guilty to the second indictment, in consideration of the United States Attorney recommending to the court that DeLuca be given a certain sentence

and that the court recommend to the Attorney General that DeLuca be not deported, he had, in effect, acquired the status of a nondeportable alien, the court having accepted the recommendations of the United States Attorney and having recommended to the Attorney General in each of the cases that DeLuca be not deported. DeLuca also contended that to give Section 241(a) (11) of the Immigration and Nationality Act of 1952 a retrospective effect would be violative of his constitutional rights.

Judge Reeves, who sentenced DeLuca and who also entered the order from which he has now appealed, made timely recommendations, in conformity with Section 155(a) of Title 8 U.S.C., 1940 Ed., to the Attorney General that DeLuca be not deported because of his convictions upon charges of having violated Section 174 of Title 21 U.S.C. (1940 Ed.).

At the time Judge Reeves, in 1943, imposed sentences upon DeLuca, Section 155(a) of Title 8 U.S.C., 1940 Ed., provided as follows:

"(a) * * * The provision of this section respecting the deportation of aliens convicted of a crime *involving moral turpitude* shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported in pursuance of this chapter; * * *."

Section 175 of Title 21 U.S.C., 1940 Ed. provided:

"§ 175. Any alien who at any time after his entry is convicted un-

1. The judgment imposed under the second indictment bore the caption "Criminal indictment in one count for violation of U.S.C., Title 26, Sec. 2553." This was a mistake, since the crime charged in the indictment and described in the judgment was clearly under Section 174 of Title 21 U.S.C. (1940 Ed.)

der section 174 of this title shall upon the termination of the imprisonment imposed by the court upon such conviction and upon warrant issued by the Secretary of Labor be taken into custody and deported in accordance with the provisions of sections 155 and 156 of Title 8 or provisions of law hereafter enacted which are amendatory of or in substitution for such sections."

In the habeas corpus proceeding, Judge Reeves reached the conclusion that his recommendations to the Attorney General that DeLuca be not deported were unauthorized and ineffective because the crimes of which DeLuca was convicted were not crimes involving moral turpitude. But the Judge's recommendations were presumptively valid and there is nothing in the record to show that the crimes were not of such a character as to involve moral turpitude. We note that in the decision of the Board of Immigration Appeals in this case the following statement appears: "It is conceded that prior to the Immigration and Nationality Act an alien convicted of the offenses in question thereby became deportable, but that a recommendation against deportation was effective to prevent deportation".

■ While it is no doubt true that there may be technical, inadvertent and insignificant violations of the laws relating to narcotics, which do not involve moral turpitude, there can be nothing more depraved or morally indefensible than conscious participation in the illicit drug traffic. The evils which result from unlawfully importing or dealing with unlawfully imported narcotic drugs are a matter of common knowledge. Even the federal laws relating to the domestic traffic in narcotic drugs, which were sustained as revenue measures, were recognized as having a moral purpose as well as that of raising revenue. United States v. Jin Fuey Moy, 241 U.S. 394, 402, 36 S.Ct. 658, 60 L.Ed. 1061; United States v. Doremus, 249 U.S. 86, 94, 39 S.Ct. 214, 63 L.Ed. 493. In United States v. Balint, 258 U.S. 250, 253; 42 S.Ct. 301, 302, 66 L.Ed. 604, the court said: "The Narcotic Act has been held by this court to be a taxing act with the incidental purpose of minimizing the spread of addiction to the use of poisonous and demoralizing drugs."

In Jordan v. De George, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886, it was held that all crimes in which fraud is an ingredient are crimes involving moral turpitude, and that a conspiracy to defraud the United States of taxes on distilled spirits was such a crime within the meaning of § 19(a) of the Immigration Act of 1917, 39 Stat. 889, as amended, 8 U.S.C., 1940 Ed., § 155(a), and required the deportation of an alien sentenced more than once to imprisonment for one year or more because of conviction for crime involving moral turpitude. The crime of dealing with narcotic drugs known to have been smuggled into the United States is certainly no less reprehensible and probably no less a fraud upon the revenues than the offenses involved in the Jordan case.

The following cases support the view that, prior to the Immigration and Nationality Act of 1952, the recommendation of a sentencing judge against the deportation of an alien convicted of a violation of the law relating to the illicit traffic in narcotics, such as the violations here involved, was effective to prevent deportation. Dang Nam v. Bryan, 9 Cir., 74 F.2d 379, 380–381; Ex parte Eng, D.C.N.D.Cal., 77 F.Supp. 74, 77.

■ It is our opinion that, because of the timely recommendations of Judge Reeves to the Attorney General that DeLuca be not deported because of his convictions in 1943, he was not, prior to the effective date of the Immigration and Nationality Act of 1952, subject to deportation because of such convictions. We do not agree, however, that the recommendations of the United States Attorney to the District Judge and the District Judge's recommendations to the Attorney General, under the circumstances disclosed by the record, constituted a binding contract between the United States and DeLuca that he should

never be deported because of the convictions. As an alien, DeLuca could not acquire a right to permanent residence in the United States which Congress was bound to respect, nor could the United States Attorney or the District Judge impair the power of Congress to provide for the deportation of aliens whom it considered undesirable.

Judge Learned Hand, speaking for the United States Court of Appeals for the Second Circuit, in United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 490, said:

> "The interest which an alien has in continued residence in this country is protected only so far as Congress may choose to protect it; Congress may direct that all shall go back, or that some shall go back and some may stay; and it may distinguish between the two by such tests as it thinks appropriate."

Aliens, so long as they are permitted to remain in the United States, are entitled to the protection of its Constitution and laws with respect to their rights of person and of property and to their civil and criminal responsibility. "But they continue to be aliens, * * * and therefore remain subject to the power of Congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment, their removal is necessary or expedient for the public interest." Fong Yue Ting v. United States, 149 U.S. 698, 724, 13 S.Ct. 1016, 1026, 37 L.Ed. 905.

Legislation providing for the deportation of aliens is not invalid because retrospective in operation. Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 529, 70 S.Ct. 329, 94 L.Ed. 307; Harisiades v. Shaughnessy, 342 U.S. 580, 594–595, 72 S.Ct. 512, 96 L.Ed. 586; Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737; United States ex rel. Barile v. Murff, D.C.Md., 116 F.Supp. 163.

We find no merit in DeLuca's contention that he did not have a fair hearing before the Special Inquiry Officer because DeLuca's case was added to the Attorney General's deportation list of cases to be given priority of treatment. It requires a substantial showing of bias to disqualify a hearing officer in administrative proceedings or to justify a ruling that the hearing was unfair. Compare Donnelly Garment Co. v. National Labor Relations Board, 8 Cir., 151 F.2d 854, 870–873, with National Labor Relations Board v. Donnelly Garment Co., 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854. Moreover, there was no dispute as to the facts in DeLuca's case. The only issues were those of law which have been considered not only by the Special Inquiry Officer but by the Board of Immigration Appeals and the District Court. Cf. United States ex rel. Marcello v. Ahrens, D.C.E.D.La., 113 F.Supp. 22, 24.

The difficulty we have with this case is in spelling out any clear-cut authorization for the deportation of an alien such as DeLuca who was convicted of crimes involving moral turpitude but was saved from deportation because of the recommendations of the sentencing judge. Section 175 of Title 21 U.S.C., 1940 Ed., (hereinbefore quoted) indicated that Congress considered violations of Section 174 of that Title as crimes involving moral turpitude, since § 175 made aliens convicted on narcotic charges under § 174 deportable "in accordance with the provisions of sections 155 and 156 of Title 8 * * *," and since § 155 related to deportation of aliens convicted of crimes involving moral turpitude, and § 156 related to the manner of their deportation.

Whether Section 241(a) of the Immigration and Nationality Act of 1952, § 1251(a) of Title 8 U.S.C.A. changed the status of DeLuca from a nondeportable alien to a deportable alien, we think is not clear. His status prior to the Act was that of an alien convicted and sentenced for crimes involving moral turpitude, but not subject to deportation because of the recommendations of the sentencing judge. Section 241(a) (4)

of the Act, § 1251(a) (4) of Title 8 U.S. C.A., provides for the deportation of an alien who

"is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial".

Section 241(a) (4) of the Act does not expressly exclude an alien convicted and sentenced for a crime involving moral turpitude which is also a violation of a law relating to the illicit traffic in narcotic drugs, and Section 241(b) of the Act, § 1251(b) of Title 8 U.S.C.A., provides that Section 241(a) (4) shall not apply if the sentencing court shall make a timely recommendation to the Attorney General that the alien be not deported.

It is true that Section 241(b) of the Act does not expressly authorize such recommendations with respect to an alien who at any time after entry has been a "narcotic drug addict, or who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs". Section 241(a) (11) of the Act, § 1251(a) (11) of Title 8 U.S.C.A.

It can be argued that by putting aliens who were drug addicts or were convicted of violations of the narcotic laws in a class distinct from those who were convicted and sentenced for crimes "involving moral turpitude," Congress intended to deprive aliens who prior to the effective date of the Act had been convicted of violations of narcotic laws but were nondeportable because of the recommendations of the sentencing judge, of their nondeportable status and to invalidate all such recommendations so far as narcotic convictions were concerned.

On the other hand, it can be argued that DeLuca was an alien who came within Section 241(a) (4) of the Act, as to whom the recommendations of no deportation would still be effective notwithstanding the provisions of Section 241(a) (11).

To increase the uncertainty as to whether Congress intended to deprive an alien such as DeLuca of the benefit of the recommendations of the sentencing court, we have the so-called savings clause, Section 405(a) of the Act, 66 Stat. 280, Note following § 1101, 8 U.S. C.A., page 156, which, so far as pertinent, reads as follows:

Sec. 405. "(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or *other document* or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or *any status*, condition, right in process of acquisition, *act,* thing, liability, obligation, or matter, civil or criminal, *done or existing,* at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, *acts,* things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect." (Italics supplied.)

We question whether it is specifically provided in the Act that an alien convicted upon a narcotic charge involving moral turpitude, who the sentencing judge recommended should not be deported, should, nevertheless, be deported because of his conviction. Unless there is such a specific provision, it would seem that the savings clause is broad

enough to preserve the efficacy of the recommendation of the sentencing judge and to prevent the deportation of the alien because of the conviction.

■ The record indicates that, since his convictions, DeLuca has been a law-abiding resident alien. The disastrous consequences of deportation to him would be so far out of proportion to any benefit the United States could seemingly derive from his removal from the country as to entitle him to have any reasonable doubts as to his deportability resolved in his favor. Cf. Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433. It seems apparent that the controlling question in this case can be put at rest only by the Supreme Court or by an amendment to the Act. We feel justified in ruling that there is no clear-cut authority in the Act for depriving DeLuca of the status of a nondeportable alien resulting from the recommendations of the sentencing judge that he be not deported.

The judgment appealed from is reversed and the case is remanded with directions to discharge DeLuca from custody under the order and warrant for deportation.