The **UNITED STATES** of America, Plaintiff,

v.

**Edward D. GULLETT, Defendant.**

**Crim. A. No. 70–CR–243.**

United States District Court,
D. Colorado.

Jan. 11, 1971.

James L. Treece, U. S. Atty. by Richard J. Spelts, Asst. U. S. Atty., Denver, Colo., and Harry H. Ellis, Senior Atty., Chief Counsel, I. R. S., Dallas, Tex., for plaintiff.

James E. Hautzinger, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Defendant has been indicted in three counts for violating the National Firearms Act, 26 U.S.C. § 5801 et seq. (1964), as amended, 26 U.S.C. § 5801 et seq. (Supp.1970). He has moved to dismiss the indictment on two grounds: (1) a timely assertion of the fifth amendment privilege against self-incrimination is a complete defense to all charges; (2) the National Firearms Act, as amended, cannot be sustained as

a valid exercise of Congress' taxing power or any other enumerated power. Both sides have submitted extensive briefs and the question is now before us.

## I.

The National Firearms Act has repeatedly been attacked on self-incrimination grounds. Two sections of the pre-1968 version were at issue in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923.(1968), decided contemporaneously with Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). In *Haynes* the Supreme Court ruled that a timely assertion of the privilege was a defense to a prosecution for violation of former section 5851, which forbade the possession of certain classes of firearms not registered with the Secretary of the Treasury or his delegate. The court found that the crime created by section 5851 was not meaningfully distinguishable from the section 5841 crime of failure to register possession of certain firearms and that compliance with the registration provision would have compelled petitioner to provide evidence facilitating his prosecution for violation of either the making or transfer clauses of section 5851. The registration requirement posed a substantial, rather than merely remote, risk of self-incrimination because those persons required to register were, with few exceptions, "inherently suspect of criminal activities" and the correlation between the obligation to register and violations of the act was "exceedingly high." 390 U.S. at 96–97, 88 S.Ct. 722, 19 L.Ed.2d 923. Since the National Firearms Act was not a regulatory scheme of general application, *id.* at 98, 88 S.Ct. 722, 19 L.Ed.2d 923; *cf.* Marchetti v. United States, 390 U.S. 39, 55–57, 88 S.Ct. 697; 19 L.Ed.2d 889 (1968), the court found inapplicable the required records exception to the privilege against self-incrimination.

In response to the *Haynes* decision, Congress amended the firearms act, 26 U.S.C. § 5801 et seq. (Supp.1970). It expanded somewhat the classes of "gangster-type" weapons subject to regulation and taxation (machineguns, sawed-off shotguns, short-barreled rifles, mufflers, silencers, "conversion kits," destructive devices, *etc.*) and provided that all weapons covered by the act, not just those imported, made or transferred in violation of the taxing sections, must be registered. 1968 U.S. Code Cong. & Adm.News 4434. In addition, Congress attempted to avoid the self-incrimination problem in the prior legislation by placing the burden of registration upon the transferor of a firearm, 26 U.S.C. § 5841(b), and by providing that, as to violations of law occurring prior to or concurrently with application or registration, any information obtained may not be used against any person required to comply with the act. *Id.* § 5848; 1968 U.S.Code, *supra,* at 4435.

Defendant in this case is charged with violating subsections 5861(b), (d) and (i) of the amended act: possessing a firearm transferred to him without prior payment of the transfer tax required by section 5811 and without the prior filing of a written application form, as required by section 5812; possessing a firearm not previously registered to him in the National Firearms Registration and Transfer Record, as required by section 5841; and possessing a firearm not identified by a serial number, as required by section 5842. Defendant maintains that, despite Congress' effort to purge the act of any self-incrimination problem, compliance with the provisions enumerated in the first two counts would have forced him to incur an appreciable risk of self-incrimination as to future acts made criminal by both federal and Colorado law. Defendant's reasoning is as follows: In order to make transfer of a "gangster-type" weapon legal from the transferee's point of view, he must secure the transferor's compliance with the statutory requirements of application for transfer, registration and payment of the transfer

tax. Registration must include the name and address of the transferee and his photograph and fingerprints, as well as identification of the firearm. 26 U.S.C. § 5812 (Supp.1970). Thus, the transferee must see to it that the transferor records information which may later prove incriminating to the transferee. Defendant claims that in his case the risk of incrimination was appreciable because of the following circumstances: he was indicted under the National Firearms Act on July 1, 1970, for violations occurring from June 26 to July 1; in July he was arrested, tried for and convicted of a "short check felony" in Colorado; the acts upon which the conviction was based occurred in June. Since compliance with the firearms act would have provided evidence that defendant owns a sawed-off shotgun, he argues that he would have faced a very real risk of prosecution for violation of Colo.Rev.Stat.Ann. § 40–11–10 (Supp.1965), which prohibits a felon from carrying or using certain concealed weapons; 18 U.S.C. 922(h) (Supp.1970) and 18 U.S.C. Appendix § 1202 (1969), which prohibit a felon's possession of certain weapons sufficiently connected with interstate commerce, and Colo.Rev.Stat.Ann. 40–11–1 (1963), which prohibits an unauthorized person from using or carrying certain concealed weapons.

■ Defendant's argument raises several difficult problems. However, we need not decide whether compliance with the National Firearms Act on the part of a transferor can be considered "self-incrimination" as to a transferee, United States v. Minor, 396 U.S. 87, 91 & n. 3, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), or whether there is any real possibility that a transferor would comply with the act at the behest of a transferee, id. at 92–94, 90 S.Ct. 284, 24 L.Ed.2d 283, since we have concluded that defendant's risk of incrimination for possible future criminal acts was remote and hypothetical.

■■ It is true, of course, that the privilege against self-incrimination ex-

tends not only to past criminal acts but also to those which may be committed in the future. Marchetti v. United States, 390 U.S. 39, 53–54, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). The proper enquiry is whether there are "substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Id. at 53, 88 S.Ct. at 705, 19 L.Ed.2d 889. First, we find it extremely unlikely that compliance with the firearms act would have produced any evidence tending to convict defendant of violations of the above-mentioned Colorado laws. While the federal statutes which defendant has cited prohibit a felon's *possession* of a firearm, a term embracing sawed-off shotguns, 18 U.S.C. § 921(a) (3) (Supp.1970), id. Appendix § 1202(c) (3) (1964), the Colorado felon's statute prohibits the *carrying* or *use* of concealed weapons specified in Colo.Rev.Stat.Ann. § 40–11–10 (Supp.1965) or other Colorado statutes. It may therefore be argued that the ownership evidenced by compliance with the National Firearms Act is not relevant on the issues of use, carrying or concealment and, even if relevant, the evidence is weak and not likely to be very incriminating. In addition, it appears that section 40–11–10 does not apply at all to shotguns, even those which have been sawed off. In the recent case of Cokley v. People, 450 P.2d 1013 (Colo.1969), the Colorado Supreme Court reversed the conviction of a felon for carrying a concealed shotgun. The court held that, since shotguns are not among the weapons enumerated in 40–11–10, they must either be included within the phrase "firearms, as defined by law" or their concealed carrying or use is not prohibited. The court interpreted "defined by law" to mean statutory law and concluded that the one conceivably applicable Colorado statute, Colo.Rev.Stat.Ann. § 53–3–1 (1963), relates only to the sale of firearms and not to the concealed weapons statute. It therefore seems highly unlikely that evidence showing that defendant owns a sawed-off shotgun could tend to prove a violation of 40–11–10.

Defendant fares no better with respect to the other Colorado statute which he cites, Colo.Rev.Stat.Ann. § 40–11–1 (1963). This statute makes the unauthorized use or carrying of certain concealed weapons a misdemeanor. Since the classes of weapons enumerated in 40–11–1 are precisely the same as those enumerated in 40–11–10, Cokley v. People, *supra*, strongly indicates that sawed-off shotguns are not prohibited. Furthermore, as mentioned above, evidence of ownership, if admissible at all, is not likely to be significantly incriminating on the issues of use, carrying and concealment.

As to the federal laws prohibiting a felon's possession of certain firearms, we are asked, in effect, to believe the following: that defendant would be arrested and tried for the commission of a felony, that there would be no plea bargaining which might reduce the offense to a misdemeanor, that defendant would be convicted and that he would then make the decision to violate the law by retaining his weapon. Furthermore, we are asked to believe that defendant would be in a position to make this decision in some reasonably foreseeable future, which means that he would have to be sentenced to probation rather than a prison term. A man in prison, which in fact is defendant's situation, is not in a position to possess a firearm.

We appreciate that an excessively minute examination of contingencies may render seemingly uncertain and remote what otherwise would appear a likely course of events. We hope that the above analysis reflects real possibilities, not trifles. In any event, we are persuaded that the risk in this case of incrimination for future criminal acts is considerably less significant than the risk faced by petitioner in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Marchetti urged the privilege against self-incrimination as a defense to his prosecution for failure to comply with the registration requirements of the federal wagering tax statutes. Since by prior judicial construction the statutes had been made entirely prospective in application, the Supreme Court was required to decide whether the privilege can be available as to future criminal acts. In holding that the privilege protects against real and substantial hazards, whether for past or future acts, the court stated:

> The hazards of incrimination created by §§ 4411 and 4412 as to future acts are not trifling or imaginary. Prospective registrants can reasonably expect that registration and payment of the occupational tax will significantly enhance the likelihood of their prosecution for future acts, and that it will readily provide evidence which will facilitate their convictions. Indeed, they can reasonably fear that registration, and acquisition of a wagering tax stamp, may serve as decisive evidence that they have in fact subsequently violated state gambling prohibitions. Compare Ala.Code, Tit. 14, §§ 302(8)—(10) (1958); Ga.Code Ann. § 26—6413 (Supp.1967). Insubstantial claims of the privilege as to entirely prospective acts may certainly be asserted, but such claims are not here, and they need only be considered when a litigant has the temerity to pursue them. 390 U.S. at 54, 88 S.Ct. at 706, 19 L.Ed.2d 889.

Clearly, the mere registration of defendant's name, address, photograph and fingerprints would not, without more, have increased the likelihood of prosecution for possession of a firearm by a felon. As mentioned above, defendant must first be convicted of a felony and then placed in a position in which possession would be possible. Finally, defendant could at that time choose not to disobey the law by giving up possession of his firearm. In our view, these contingencies render the hazard of incrimination remote in comparison with Marchetti's risk of imminent prosecution on the basis of evidence gathered from his registration, including the declaration of a present intent to wager which the taxing statute required. 390 U.S. at 53, 88 S.Ct. 697, 19 L.Ed.2d 889.

Defendant's argument with respect to count III of the indictment is less tortuous. Count III charges that defendant received or possessed a firearm which was not identified with a serial number, in violation of subsection 5861(i) of the amended act. Section 5842 of the amended act requires that a transferee of a firearm not identified by serial number obtain such a number from the Secretary of the Treasury or his delegate. Therefore, defendant maintains, he faced precisely the dilemma which confronted Haynes: to obtain a serial number would provide the government with evidence that defendant had committed the crime of receiving or possessing a weapon without a serial number.

■ This argument might be persuasive were it not for section 5848 of the amended act, which restricts the use of information obtained by federal authorites. That section provides, in part:

(a) General Rule.—No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

While subsection 5842(b) does not use either the word "apply" or "register" to describe the transferee's duty to obtain a serial number, the import of the subsection is nevertheless that a transferee in defendant's situation must *apply* for such a number:

(b) Firearms without serial number.—Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information re-

quired by subsection (a) of this section shall identify the firearm with a serial number assigned by the Secretary or his delegate and any other information the Secretary or his delegate may by regulations prescribe.

That section 5848 should be construed to provide protection for one who complies with subsection 5842(b) seems especially reasonable in light of Congress' intention to avoid the problems posed by self-incrimination. 1968 U.S.Code Cong. & Adm.News 4435. We conclude, therefore, that evidence obtained when a transferee applies for a serial number may not be used in a 5861(i) prosecution or in a prosecution for any other prior or contemporaneous violations of law and that this restriction on the use of information sufficiently protects defendant's privilege against self-incrimination.

II.

Defendant also maintains that the National Firearms Act, as amended, cannot be sustained as a valid exercise of the taxing power conferred upon Congress by article 1, section 8, of the United States Constitution or as a valid exercise of any other enumerated power and is therefore an unconstitutional invasion of the powers reserved to the states by the tenth amendment.

The Supreme Court has ruled that the pre-1968 version of the firearms act is a valid exercise of the taxing power. United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937). Defendant acknowledges this fact but argues that certain of the amendments enacted in 1968 remove any pretense that the act is a law for laying and collecting taxes. In addition to imposing a tax upon the making and transfer of firearms, the present act requires that any such making or transfer be approved by the Secretary of the Treasury or his delegate. The pre-1968 version did not contain these restrictions. *Compare* 26 U.S.C.

§§ 5811(b),—14(a),—21 (1964) *with* 26 U.S.C. 5811(b),—12,—22 (Supp.1970). An application to make or transfer a firearm may be denied if the making, transfer, receipt or possession would place the person making or possessing the firearm in violation of law. 26 U.S.C. §§ 5812(a) (6),—22 (Supp.1970). Treasury regulations further provide that such applications must be accompanied by a certificate from a local police chief or other acceptable person, stating that he is satisfied that the firearm is intended for legal purposes and authenticating the fingerprints and photograph required to be submitted. 26 CFR § 179.9.

Defendant does not argue that the present act prohibits all trade in "gangster-type" weapons. Apparently lawful traffic is countenanced. Nonetheless, he urges, the new statutory provisions and regulations make plain that the act is not really a taxing measure at all but a device for regulating and prohibiting trade in suspicious weapons on the part of persons inherently suspect of criminal activities. *Cf.* Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

We do not entirely disagree with defendant's argument. By it we are reminded once again that few disputes are ever really settled. We only choose to regard them so for the sake of a modicum of security in our affairs. There is little doubt, however, that, for the present at least, the Supreme Court has settled in favor of deference to far-reaching congressional exercises of article 1, section 8, powers. The Harrison Narcotics Act cases indicate that legislation which regulates, and even largely prohibits, conduct which it also purports to tax is a legitimate exercise of the taxing power. *E. g.*, United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919); Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497 (1919). Indeed, in a recent decision concerning the Harrison Act and the Marihuana Tax Act, the Supreme Court disposed in a footnote of an argument nearly identical to that which defendant here makes. Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). Writing for the majority and addressing himself to the dissenting opinion of Mr. Justice Douglas, Mr. Justice White stated:

The dissent suggests that the courts should refuse to enforce § 4705(a) as part of a revenue measure. But these very order form provisions were upheld long ago as valid revenue laws even though they operated to prevent large classes of people from obtaining order forms—and hence from acquiring drugs—at all. United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919); Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497 (1919); see Nigro v. United States, 276 U.S. 332, 48 S.Ct. 338, 72 L.Ed. 600 (1928). A statute does not cease to be a valid tax measure because it deters the activity taxed, because the revenue obtained is negligible, or because the activity is otherwise illegal. See, *e. g.*, Marchetti v. United States, 390 U.S. 39, 44, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); United States v. Kahriger, 345 U.S. 22, 28, 73 S.Ct. 510, 97 L.Ed. 754 (1953); License Tax Cases, 5 Wall. 462, 18 L.Ed. 497 (1867).

Even viewing § 4705(a) as little more than a flat ban on certain sales, it is sustainable under the powers granted Congress in Art. I, § 8. See Yee Hem v. United States, 268 U.S. 178, 183, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Brolan v. United States, 236 U.S. 216, 222, 35 S.Ct. 285, 59 L.Ed. 544 (1915); cf. United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

Since the National Firearms Act, as amended, permits some traffic in "gangster-type" weapons, we conclude that it is a permissible exercise of Congress' taxing power.

For the foregoing reasons, it is

Ordered that defendant's motion to dismiss be and the same hereby is denied.